UNITED STATES  DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

NATHANIEL DOWL, JR.                             CIVIL ACTION

VERSUS                                          NO.  11-0417

HOWARD PRINCE, WARDEN ELAYN                     SECTION "R"(4)
HUNT CORRECTIONAL CENTER

REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including

an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant

to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section

2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be

disposed of without an evidentiary hearing.  *See* **28 U.S.C. § 2254(e)(2) (2006)**.[1]

I.      Factual and Procedural Background

The petition, Nathaniel Dowl, Jr. ("Dowl"), is a convicted inmate incarcerated in the Elayn

Hunt Correctional Center in St. Gabriel, Louisiana.[2]  On December 19, 2007, Dowl was charged by

---

[1]Under 28 U.S.C. § 2254(e)(2), an Evidentiary Hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 1.

bill of information in Orleans Parish with three counts of filing false public records.[3]  He entered a

plea of not guilty to the charges on January 9, 2008.[4]

The record reflects that the case against Dowl involved three parcels of real estate: (1) 8633

Zimple Street ("Zimple property"), owned by Robinson Ventures, LLC, which is owned by Michelle

Robinson; (2) 8417 Panola Street ("Panola property"), owned by Michelle Robinson; and (3) 3432

Livingston Street ("Livingston property") owned by Mr. and Mrs. Oscar V. Poydras.[5]  Dowl filed

quit claim deeds into the Orleans Parish public records related to each of the properties.  Dowl

attached to each deed documents purporting to vest him with ownership of the properties.  The

Zimple and Livingston property "deeds" implied transfers of ownership from the City of New

Orleans to him, while the "deed" pertaining to the Panola property indicated that Dowl had

purchased the property for $1.00.  Through these fabricated claims of ownership, Dowl attempted

to evict Robinson and the Poydrases from their own property and prevented the Poydrases from

rebuilding their damaged property after Hurricane Katrina.

Dowl was tried before a jury on February 17 through 19, 2009, and he was found guilty as

charged on all three counts.[6]  At a hearing held May 18, 2009, the Trial Court denied Dowl's

---

[3]St. Rec. Vol. 1 of 3, Bill of Information, 12/19/07 (as amended 1/7/09, 2/12/09).

[4]St. Rec. Vol. 1 of 3, Minute Entry, 1/9/08.

[5]The facts were taken from the published opinion of the Louisiana Fourth Circuit Court of Appeal after direct appeal.  *State v. Dowl*, 39 So.2d 754, 757 (La. App. 4th Cir. 2010); St. Rec. Vol. 2 of 3, 4th Cir. Opinion, 2009-KA-0989, pp. 1-2, 5/12/10.

[6]St. Rec. Vol. 1 of 3, Trial Minutes, 2/17/09; Trial Minutes, 2/18/09; Trial Minutes, 2/19/09; Verdict of the Jury (Count 1), 2/19/09; Verdict of the Jury (Count 2), 2/19/09; Verdict of the Jury (Count 3), 2/19/09; St. Rec. Vol. 2 of 3, Trial Transcript, 2/17/09; Trial Transcript, 2/18/09; Trial Transcript, 2/19/09.

motions for new trial and for post-verdict judgment of acquittal.[7]  After waiver of legal delays and

the taking of witness impact statements, the Trial Court sentenced Dowl to serve five years at hard

labor on each count, with the sentence on count two to run consecutive to the sentence on count

one.[8]  The Court also denied Dowl's motion to reconsider the sentence.[9]

On direct appeal to the Louisiana Fourth Circuit Court of Appeal, Dowl's counsel argued

that the evidence was insufficient to support the verdict.[10]  In his pro se filed supplemental brief,

Dowl raised four more assignments of error:[11] (1) the Trial Court erred in allowing the jury to

examine the written evidence during deliberations; (2) the Trial Court erred in not granting a mistrial

on the grounds of prejudicial conduct and an incompetent juror which denied him a fair trial; (3) the

Trial Court erred in denying the motion to quash the bill of information; and (4) the Trial Court

abused its discretion by sentencing him based on prior infirm convictions and to an excessive

sentence.  On May 12, 2010, the Louisiana Fourth Circuit affirmed the conviction and sentence,

finding no merit to any of the claims.[12]

The Louisiana Supreme Court also denied Dowl's related writ application without stated

reasons on January 7, 2011.[13]  Dowl's conviction became final 90 days later, on April 7, 2011, when

---

[7]St. Rec. Vol. 1 of 3, Sentencing Minutes, 5/18/09; Motion for New Trial, 5/18/09; Trial Court Order (2), 5/18/09; Motion for Post-Verdict Judgment of Acquittal, 5/18/09; Trial Court Order (3), 5/18/09.

[8]*Id.*; St. Rec. Vol. 1 of 3, Minute Entry, 5/18/09; Sentencing Transcript, 5/18/09.

[9]*Id.*; St. Rec. Vol. 1 of 3, Motion to Reconsider Sentence, 5/18/09; Trial Court Order, 5/18/09.

[10]St. Rec. Vol. 1 of 3, Appeal Brief, 2009-KA-0989, 8/24/09.

[11]St. Rec. Vol. 1of 3, Pro Se Supplemental Brief, 2009-KA-0989, 10/19/09.

[12]*State v. Dowl*, 39 So.2d at 754; St. Rec. Vol. 2 of 3, 4th Cir. Opinion, 2009-KA-0989, 5/12/10.

[13]*State v. Dowl*, 52 So.3d 884 (La. 2011); St. Rec. Vol. 3 of 3, La. S. Ct. Order, 2010-KO-1325, 1/7/11; La. S. Ct. Writ Application, 10-KO-1325, 6/8/10 (dated 6/1/10); St. Rec. Vol. 1 of 3, La. S. Ct. Letter, 2010-KO-1325, 6/8/10 (showing postmark 6/3/10).

he did not file a writ of certiorari with the United States Supreme Court. *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1).

## II.   Federal Petition

On February 24, 2011, the clerk of this Court filed Dowl's petition for federal habeas corpus relief, in which he raised four grounds for relief:[14] (1) the evidence was insufficient to support the conviction; (2) the Trial Court erred in denying the motion to quash the bill of information; (3) the Louisiana Fourth Circuit erred by ruling that it was harmless for the Trial Court to allow the jury to examine the written evidence during deliberations; and (4) the consecutive sentences are excessive.

The State filed a response in opposition to Dowl's petition conceding that the petition is timely filed and the claims have been exhausted.[15]  The State further argues that Dowl's claims are without merit, and he is not entitled to relief.

## III.   General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[16] applies to this petition, which is deemed filed in this Court under the federal mailbox rule on February 10, 2011.[17]  The threshold questions in habeas review under the amended

---

[14]Rec. Doc. No. 1.

[15]Rec. Doc. No. 15.

[16]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[17]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999), *cert. denied*, 529 U.S. 1057 (2000);

statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c) (2006)). The State has not presented any of these defenses. The Court's review of the record reflects that the petition was timely filed, the claims have been exhausted, and none of the claims are in procedural default.

## IV.   Standards of Review of the Merits

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000). It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA. The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable

---

*Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Dowl's petition on February 24, 2011, when pauper status was granted. Dowl's signature on the petition is dated February 10, 2011. This is considered to be the earliest date on which he could have submitted the pleadings to prison officials for mailing.

application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485.

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485. A state court's decision can involve an "unreasonable application" of federal law if it either: (1) correctly identifies the governing rule but then applies it unreasonably to the facts; or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *cf. Wright v. West*, 505 U.S. 277, 304 (1992). The court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *See, e.g., id.* at 305; *see also Chambers v. Johnson*, 218 F.3d 360, 364 (5th Cir. 2000), *cert. denied*, 531 U.S. 1002 (2000). "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230,

246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006). In addition, review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, __ U.S. __, 131 S. Ct. 1388, 1398 (2011).

## V.   Analysis

### A.   Insufficient Evidence

Dowl alleges that the evidence presented at trial was insufficient to support the guilty verdict. He contends that the State failed to prove that the quit claim deeds were public records. He also argues that the quit claim deeds were not in the proper form for contracts, and therefore were not proper documents to which anyone was bound. He also argues that the evidence showed that someone else filed the documents related to count two. Dowl also argued that the evidence established that he paid the taxes on the property and was entitled to the benefits of doing so, including ownership. He also complains that some of the documents were not properly admitted into evidence, and the State improperly challenged the validity of the documents without an adversary proceeding.

Dowl's counsel raised this claim on direct appeal. The Louisiana Fourth Circuit, relying upon *Jackson v. Virginia*, 443 U.S. 307 (1979), and related state law, reviewed the testimony and evidence presented to the jury and resolved that the State had presented evidence to establish each of the elements required to prove that Dowl knowingly filed false documents into the public records. This was the last reasoned opinion on the issue. *Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991) (when the last state court judgment does not indicate whether it is based on procedural default or the

7

merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion).

Under *Jackson*, 443 U.S. at 307, a court must determine, after viewing the evidence in the light most favorable to the prosecution, whether a rational trier of fact could have found the essential elements of the crime to have been proven beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir. 2008); *Williams v. Cain*, No. 09-30164, 2011 WL 134951, at *3 (5th Cir. Jan. 14, 2011). Thus, to determine whether the commission of a crime is adequately supported by the record, the court must review the substantive elements of the crime as defined by state law. *Perez*, 529 F.3d at 594 (citing *Jackson*, 443 U.S. at 324 n.16); *Weeks v. Scott*, 55 F.3d 1059, 1062 (5th Cir. 1995).

The court's consideration of the sufficiency of the evidence extends only to what was presented at trial. *See McDaniel v. Brown*, __U.S. __, 130 S. Ct. 665, 672, 673 (2010) (recognizing that a reviewing court is to consider the trial evidence as a whole under *Jackson*); *Johnson v. Cain*, Fed. Appx. 89, 91 (5th Cir. 2009) (*Jackson* standard relies "upon the record evidence adduced at trial.") (quoting *Jackson*, 443 U.S. at 324). Review of the sufficiency of the evidence, however, does not include review of the weight of the evidence or the credibility of the witnesses; those determinations are the exclusive province of the jury. *United States v. Young*, 107 Fed. Appx. 442, 443 (5th Cir. 2004) (citing *United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993); *see also Jackson*, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."). Thus, all credibility choices and conflicting inferences are to be resolved in favor of the verdict. *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005). A reviewing habeas court is not

authorized to substitute its interpretation of the evidence or the credibility of witnesses for that of the fact-finder. *Weeks*, 55 F.3d at 1062.

Dowl was convicted of three counts of filing false documents into the public records under La. Rev. Stat. Ann. § 14:133. In order to prove the offense of filing false public records, the State must prove that the person filed or deposited into any public office or with any public official a forged document, any wrongfully altered document, or any document containing a false statement or false representation of a material fact and have knowledge of its falsity. La. Rev. Stat. Ann. § 14:133; *State v. Leafer*, 970 So.2d 98, 99 (La. App. 3d Cir. 2007).

In reviewing the evidence under the *Jackson* standard, the Louisiana Fourth Circuit addressed each element of the statute, the filing, the falsity, and knowledge of the falsity, finding that the evidence presented to the jury provided sufficient proof of each element. Based thereon, the Court resolved that the evidence was sufficient to support the verdict.

The record, testimony, and evidence demonstrated that Dowl filed the documents in question into the Notarial Archives of the City of New Orleans and Orleans Parish.[18] Dowl does not dispute that the Notarial Archives is a public office or that the documents in question were filed into the records of that office and this was established at trial.[19] Dowl does argue that the deed document related to count two, the Panola property, was actually filed by someone else. That someone else

---

[18]St. Rec. Vol. 2 of 3, Trial Transcript, pp. 14-16 (Kitchens), pp. 29-30, 33, 37, 38, 39 (Keifer) 2/17/09; St. Rec. Vol. 2 of 3, Trial Transcript, p. 6 (Keifer), 2/18/09.

[19]St. Rec. Vol. 2 of 3, Trial Transcript, p. 24 (Keifer), 2/17/09.

was his wife, Barbara Dowl.[20]  Even so, Dowl's proven role in falsifying the documents for filing was sufficient for a jury to condemn him as a culpable principal under Louisiana law.[21]

The State also established that the deed documents created by Dowl contained false information.  The documents for the Zimple and Livingston properties purported to be "tax sales" transferring those properties from the City of New Orleans to Dowl through Reginald Zeno, the Director of Finance for the City of New Orleans.[22]  Zeno testified that he had no authority to transfer City-owned property, that he did not execute the documents, and that he never authorized the sale of these properties to Dowl.[23]  Assistant City Attorney Christopher Lund also testified that the sale documents were not consistent with the manner in which the City transferred ownership of property by tax sale.[24]  The State also established through Walter O'Brien, the City's Finance Operations Manager that the Zimple property document contained false information regarding the payment of property taxes from 1992 through 2005.[25]

In addition, as for the Panola property, the testimony and evidence established that Dowl never had an ownership interest in the property.[26]  The evidence was clear that the Robinsons owned

---

[20]*Id.*, pp. 33, 38 (Keifer).

[21]Under La. Rev. Stat. Ann. § 14:24, "[a]ll persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals."  *See*, *State v. Carpenter*, 772 So.2d 200, 207 (La. App. 3d Cir. 2000).

[22]*See* St. Rec. Vol. 2 of 3, Trial Transcript, pp. 115-16 (Mrs. Poydras), 2/18/09.

[23]St. Rec. Vol. 2 of 3, Trial Transcript, pp. 16, 19, 20, 22, 25 (Zeno), 2/18/09.

[24]*Id.*, pp. 32-33, 34, 35-36, 37-38 (Lund).

[25]*Id.*, pp. 53-54, 56-58, 63-64, 65-66 (O'Brien), pp. 91-92 (Mr. Robinson).

[26]St. Rec. Vol. 2 of 3, Trial Transcript, p. 22 (Kitchens), 2/17/09.

the property and never sold or transferred any interest in the property to Dowl.[27]   The falsified deed document filed by Dowl indicated that he had purchased the property for $1.00 and that his claim thereto was based on a non-existent lien on the property.[28]   Braden Robinson testified that he and his wife did not owe Dowl any money, and they never received notice of an indebtedness from Dowl prior to being served with notice of eviction.[29]

With regard to Dowl's knowledge of the falsities in each of the deed documents, the State presented evidence to show that Dowl knew he had no ownership interest in any of the properties as alleged in the documents he filed.   The Court notes that, to the extent Dowl argues that the documents he created were not valid contracts, this begs the question of his knowledge of the falsity and infirmity of the documents he filed.   Nevertheless, the Court can find no suggestion that the Louisiana criminal statute requires that the documents be valid legal documents.   As discussed above, the statute requires the filing in a public office of a false document with knowledge of their falsity.   The evidence is discussed with a focus on these elements.

The State presented evidence to show that Dowl once owned the Zimple property, which he lost by tax sale from the City to the Robinsons in 2004.[30]   Dowl never redeemed the property from the Robinsons, and he was eventually evicted after litigation over the sale.[31]   Similarly, Dowl once owned the Livingston property which the City declared blighted and sold at public sale to the

---

[27]St. Rec. Vol. 2 of 3, Trial Transcript, pp. 74, 75 (Mr. Robinson), 2/18/09.

[28]*Id*., pp. 79, 83 (Mr. Robinson).

[29]*Id*., pp. 77-78, 79, 83 (Mr. Robinson).

[30]St. Rec. Vol. 2 of 3, Trial Transcript, p. 21 (Kitchens), 2/17/09; St. Rec. Vol. 2 of 3, Trial Transcript, pp. 84-92 (Mr. Robinson), 2/18/09.

[31]St. Rec. Vol. 2 of 3, Trial Transcript, pp. 85-86 (Mr. Robinson), 2/18/09.

Poydrases.[32]  After litigation of his claim to that property, the ownership by the Poydrases was established by the state courts.[33]  Furthermore, the evidence showed that Dowl never had any connection with the Panola property which was owned privately by the Robinsons as their residence.[34]  The State presented these facts as proof that Dowl knew he lacked ownership interest and acted to retaliate against the Robinsons and the Poydrases for their legitimate purchases of the Zimple and Livingston properties.

Considering this evidence, a reasonable jury could readily have found sufficient evidence to prove that Dowl filed false documents into a public office knowing the documents to have contained false information.  The state courts' denial of relief on this claim was not contrary to, or an unreasonable application of, *Jackson*.  Dowl is not entitled to relief on this claim.

## B.    Denial of Motion to Quash Bill of Information

Dowl alleges that the state trial court erred in denying the motion to quash the bill of information where the State failed to provide an adequate response to the bill of particulars.  Dowl raised this claim pro se on direct appeal to the Louisiana Fourth Circuit.  The Court found no merit in the claim and resolved the bill of information and the answers to the bill of particulars provided Dowl with the required notice of the crimes with which he was charged sufficient to prepare his defense.  This was the last reasoned decision on this issue.  *Ylst*.

The United States Fifth Circuit Court of Appeals has declined to review claims of insufficient indictment forms because "[t]he sufficiency of a state indictment is not a matter for

---

[32]St. Rec. Vol. 2 of 3, Trial Transcript, pp. 102-103, 104 (Mrs. Poydras), 2/18/09.

[33]*Id*., pp. 110-12, 114, 119, 123-125, 127-128 (Mrs. Poydras).

[34]St. Rec. Vol. 2 of 3, Trial Transcript, p. 22 (Kitchens), 2/17/09; St. Rec. Vol. 2 of 3, Trial Transcript, pp. 74, 75 (Mr. Robinson), 2/18/09.

federal habeas corpus relief unless it can be shown that the indictment is so defective that the convicting court had no jurisdiction . . . [and] this can be determined only by looking to the law of the state where the indictment was issued." *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985) (citation and quotations omitted) (emphasis added); *Murphy v. Beto*, 416 F.2d 98, 100 (5th Cir. 1969).  Resolution of such an issue on federal habeas review is precluded "[w]hen it appears . . . that the sufficiency of the indictment was squarely presented to the highest court of the state on appeal, and that court held that the trial court had jurisdiction over the case . . ." *Id.* (quotation and citation omitted); *Murphy*, 416 F.2d at 100 ("[J]urisdiction to try an offense includes jurisdiction to determine whether the offense is properly charged.")

In this case, Dowl's claim was presented to the Louisiana Supreme Court on review of his direct appeal.  The Court's denial of relief without stated reasons condoned the findings made by the Louisiana Fourth Circuit.  *Ylst*.  As noted above, the Louisiana Fourth Circuit determined that the bill of information and the State's answers to the bill of particulars were sufficient to provide Dowl with notice of the charges against him and otherwise complied with La. Code Crim. P. art. 464, which provides:

> The indictment shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged. It shall state for each count the official or customary citation of the statute which the defendant is alleged to have violated. Error in the citation or its omission shall not be ground for dismissal of the indictment or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice.

These findings are consistent with the holding of the United States Supreme Court that an indictment is sufficient if it both informs the defendant of the accusation against him so as to enable him to prepare his defense, and affords him protection against double jeopardy.  *United States v. Debrow*, 346 U.S. 374 (1953).

As resolved by the state courts, the bill of information, together with the State's answers, informed Dowl of the details forming the basis of the charges against.  The bill of information charged him with filing false public records on April 26, 2006, May 2, 2006, and May 9, 2006, described as the quit claim deeds for the property located at 8633 Zimple Street, 3432 Livingston Street, and 8417 Panola Street, respectively.[35]  The State also filed three answers to the requests for bill of particulars and/or motions to quash filed by the defense.[36]  These answers further provided Dowl with the statutory citation to La. Rev. Stat. Ann. § 14:133, under which he was being charged with particular reference to the false and/or forged documents outlined in the bill and within the answers.[37]  He was specifically advised of the factual basis for the State's suggestion that the documents were forged and contained false information.[38]  This information included references to the true ownership of the property and to the fact that there were no sales between the parties.

Thus, as resolved by the state courts, the bill of information and the answers to the bill of particulars were sufficient to place Dowl on notice of the charges against him and for him to prepare his defense.  The details provided in the indictment comply with the test for constitutional sufficiency established by the Supreme Court.

The state courts' denial of relief on this claim was not contrary to, or an unreasonable application of, Supreme Court precedent.  Dowl is not entitled to relief on this claim.

---

[35]St. Rec. Vol. 1 of 3, Bill of Information, 12/19/07 (as amended).

[36]St. Rec. Vol. 1 of 3, State's Answer, 8/21/08; State's Answer, 1/22/09; State's Answer, 2/5/09.

[37]St. Rec. Vol. 1 of 3, State's Answer, 1/22/09; State's Answer, 2/5/09.

[38]St. Rec. Vol. 1 of 3, State's Answer, 1/22/09; State's Answer, 2/5/09.

### C.     <u>Jury Allowed to Examine Written Evidence During Deliberations</u>

Dowl next alleges that the Louisiana Fourth Circuit erred in finding it harmless for the Trial Court to allow the jury to examine the written evidence during deliberations, because the evidence clearly attributed to the verdict. This issue was raised by Dowl pro se on direct appeal based strictly on state law, specifically La. Code Crim. P. art. 793, which limits the presentation of written evidence to a jury during deliberations. The Louisiana Fourth Circuit denied relief finding that the documents were appropriately presented to the jury because they were not direct evidence of Dowl's guilt but instead were used only to prove their existence. Alternatively, the Court determined that, even if there was error by the Trial Court, it was harmless error in light of the overwhelming testimony and other evidence from the witnesses.

States are free to implement procedures regarding the presentation and admission of evidence, provided that those procedures do not infringe on a constitutional guarantee. *Riggins v. Nevada*, 504 U.S. 127, 147 (1992); *Burgett v. State of Texas*, 389 U.S. 109 (1967). Therefore, federal courts do not sit to review the propriety of state court evidentiary rulings, unless the proceedings violate due process such that the violation renders the criminal proceeding fundamentally unfair. *Riggins*, 504 U.S. at 147 (quoting *Lisenba v. People of the St. of Ca.*, 314 U.S. 219, 236-37 (1941)); *see Swarthout v. Cooke*, __ U.S. __, 131 S. Ct. 859, 861 (2011) (federal habeas review does not lie for errors of or in applying state law); *see also United States v. Derden*, 978 F.2d 1453, 1458 (5th Cir. 1992) (errors of state law, including evidentiary errors, are <u>not</u> cognizable in habeas corpus, as such, and only rise to constitutional dimension if they so infuse the trial with unfairness as to deny due process such that they more likely than not caused a suspect verdict); *Peters v. Whitley*, 942 F.2d 937, 940 (5th Cir. 1991) (habeas review is proper only to

determine whether a state trial judge's error is so extreme as to render the trial fundamentally unfair or violate an explicit constitutional right).

The question of due process in the criminal proceeding presents a mixed question of law and fact. *Dickson v. Sullivan*, 849 F.2d 403, 405-06 (9th Cir. 1988).  Under the applicable standard of review, this court therefore must determine if the state court's decision is contrary to or involved an unreasonable application of Supreme Court precedent.

In *Lisenba*, the Supreme Court stated that the denial of due process "is the failure to observe that fundamental fairness essential to the very concept of justice.  In order to declare a denial of it we must find that the absence of that fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial."  *Lisenba*, 314 U.S. at 236.  In keeping with this principle, the United States Fifth Circuit Court of Appeals has stated that the admission of prejudicial evidence is fundamentally unfair so as to justify federal habeas corpus relief <u>only</u> if it is "material in the sense of a crucial, critical, highly significant factor."  *Hills v. Henderson*, 529 F.2d 397, 401 (5th Cir. 1976) (quotation omitted); *Givens v. Cockrell*, 265 F.3d 302 (5th Cir. 2001); *Porter v. Estelle*, 709 F.2d 944, 957 (5th Cir. 1983).

As noted by the state courts, the decision to allow the evidence to be viewed by the jury was a discretionary call under La. Code Crim. P. art. 793(a), which provides in relevant part:

> Except as provided in Paragraph B of this Article, a juror must rely upon his memory in reaching a verdict.  He shall not be permitted to refer to notes or to have access to any written evidence.  Testimony shall not be repeated to the jury.  Upon the request of a juror and in the discretion of the court, the jury may take with it or have sent to it any object or document received in evidence when a physical examination thereof is required to enable the jury to arrive at a verdict.

16

The Louisiana courts resolved that the Trial Court's decision to allow the documents was correct and not violative of this rule. Although it was alternatively addressed under harmless error, Dowl has not here established that a violation of state law even occurred.

Furthermore, as addressed in detail in responding to Dowl's insufficient evidence claim, the testimony of the witnesses established that the contents of the deeds were false. The deed documents standing alone did not establish his guilt or the falsity of the contents. The testimony regarding the filing of the deeds, the false claims within the deeds, and the proof of his knowledge of the falsehoods established Dowl's guilt. Thus, as resolved by the state appellate court, Dowl has not established that the presentation of the deeds to the jury during deliberations contributed to the finding of guilt or otherwise denied him a fair trial.

The denial of relief on this claim was not contrary to, or an unreasonable application of, federal law. Dowl is not entitled to relief on this claim.

### D.    **Consecutive Sentences Are Excessive**

Dowl claims that the Trial Court erred in imposing the consecutive sentences. He claims that it was beyond the court's discretion and was grossly disproportionate to the crime. Dowl also raised this issue pro se on direct appeal. The Louisiana Fourth Circuit found no merit to the claim based on the reasons for sentencing provided by the Trial Court and noting that Dowl could have been sentenced to three consecutive sentences since the counts were separate incidents.

Federal courts accord broad discretion to a state trial court's sentencing decision that falls within statutory limits. *Haynes v. Butler*, 825 F. 2d 921, 923-24 (5th Cir. 1987); *Turner v. Cain*, 199 F.3d 437, 1999 WL 1067559, at *3 (5th Cir. Oct. 15, 1999) (Table, Text in Westlaw) (sentence was within Louisiana statutory limits and within trial court's discretion, therefore petitioner failed to

state cognizable habeas claim for excessive sentence).  As here, if a sentence is within the statutory limits, a federal habeas court will not upset the terms of the sentence unless it is shown to be grossly disproportionate to the gravity of the offense.  *See Harmelin v. Michigan*, 501 U.S. 957 (1991); *Solem v. Helm*, 463 U.S. 277 (1983).

The United States Supreme Court has stated that "'[t]he Eighth Amendment does not require strict proportionality between crime and sentence.  Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime.'"  *Ewing v. California*, 528 U.S. 11, 23 (2003) (quoting *Harmelin*, 501 U.S. at 1001 (Kennedy J., concurring in part and concurring in judgment)).  The Supreme Court has recognized that only the rare case will reach the level of gross disproportionality.  *Id.*, 538 U.S. at 30 (quoting *Harmelin*, 501 U.S. at 1005).  In those rare case, "when a threshold comparison of the crime committed to the sentence imposed leads to an inference of 'gross disproportionality,'" a court then considers (a) the sentences imposed on other criminals in the same jurisdiction; and (b) the sentences imposed for commission of the same offense in other jurisdictions.  *Smallwood v. Johnson*, 73 F.3d 1343, 1346-47 (5th Cir. 1996); *McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992).  A federal court will not review a state imposed sentence within the statutory limits without a threshold showing that the sentence is "grossly disproportionate to the offense" so to be completely arbitrary and shocking.  *See Smallwood*, 73 F.3d at 1347; *Bonner v. Henderson*, 517 F.2d 135, 136 (5th Cir. 1975).  Therefore, if a sentence is within the statutory limits, a federal habeas court will not upset the terms of that sentence, unless it is first shown to be disproportionate to the offense as to be completely arbitrary and shocking.  *Id.*

Under Louisiana law, a person convicted of filing false public records "shall be imprisoned for not more than five years with or without hard labor or shall be fined not more than five thousand

dollars, or both."  La. Rev. Stat. Ann. § 14:133(C).  Louisiana law also provides for multiple sentences to run consecutively when a defendant is convicted of distinct offense affecting different victims at different times and locations.  La. Code Crim. P. art. 883.

Dowl was sentenced to five years on each of the three counts, with two of the sentences to run consecutively and the other designated to run concurrently.  The sentences fall within the statutory limits allowed under Louisiana law, but are not the maximum sentence since the fines were not imposed.  In imposing the sentences, the state trial court reviewed the presentence report and other factors in determining an appropriate sentence.  The Trial Court recounted Dowl's lengthy criminal history, ranging from misdemeanors and drug possession to aggravated robbery and attempted second degree murder and "spanning three decades and five states."[39]  The Court also noted that Dowl was classified by the Louisiana Department of Corrections as a sixth felony offender.[40]

In commenting on the facts of the instant crimes, the Trial Court referenced generally all of the evidence leading to the verdict.[41]  He also referenced the victim impact statement contained in the report and the trial testimony given by the Robinsons.  Mrs. Robinson also gave a victim impact statement to the Court in which she claimed that Dowl "paper stalked" and terrified her family, and that it took her four years to straighten out the problems he caused with her businesses and the state courts.[42]

---

[39]*State v. Dowl*, 39 So.3d at 768; St. Rec. Vol. 1 of 3, Sentencing Transcript, 4-6, 5/18/09; St. Rec. Vol. 2 of 3, 4th Cir. Opinion, pp. 21-22, 5/12/10.

[40]St. Rec. Vol. 1 of 3, Sentencing Transcript, 4-6, 5/18/09.

[41]*Id*., p. 6.

[42]*Id*., pp. 8-9.

The Court also accepted the victim impact statement offered by Mrs. Poydras through the district attorney regarding the lost financial opportunities and financial and emotional impact Dowl's actions had on her family.[43]  She also referred to the duplicity and vindictive nature of his actions, since Dowl had attempted to evict them in 2004, which led to a court order to establish their title.

The Court further referenced the sentencing guidelines under La. Code Crim. P. art. 894.1 and determined that there was a likelihood that Dowl would commit another crime if his sentence was suspended or probation imposed, as evidenced by his criminal history.[44]  The Court resolved that Dowl was in need of correctional treatment in a custodial environment, and that a lesser sentence would depreciate the seriousness of the crimes for which he was convicted.[45]  The Court further held that Dowl's harassing actions amounted to deliberate cruelty to the victims and that he threatened violence upon them with the intent of influencing the outcome of the criminal proceedings.  To support this, the Court referenced the evidence that Dowl "stalked" the victims, "sought out means to contact them, harass them, and to use subterfuge of legal pleadings to influence institutions, and conduct, and outcome of criminal proceedings."[46]  The Court found that his actions caused permanent injury to the victims, including significant economic loss.  The Court finally resolved that none of the mitigating factors listed in the statute applied to Dowl.  The Court

---

[43]*Id.*, p. 7.

[44]*Id.*, p. 10.

[45]*Id.*, p. 11.

[46]*Id.*, p. 11-12.

analyzed this crime to a never-ending armed robbery, a crime which would have carried a sentence of 10 to 99 years.[47]

The Court finds that the state court's finding of harassment and economic loss was clearly born out by the testimony, as outlined in some detail earlier in this report and as reviewed by this Court in the trial transcripts. The intentional and egregious nature of the actions taken by Dowl is demonstrated by his claiming the property as his own knowing it was not his and evicting the Poydrases and the Robinsons from their own property and personal homes.

The Trial Court was also within its discretion to impose two of the sentences consecutively since the offenses were committed at different times with different victims, as indicated by the Trial Court. Nothing Dowl has presented would demonstrate violation of the constitution by the imposition of the consecutive sentences. *Accord*, *Benoit v. Cain*, No. 07-0039, 2009 WL 4572903, at *21 (W.D. La. Dec. 4, 2009) (Report adopted).

Dowl has not demonstrated that the sentence imposed upon him was disproportionate to the malicious and vindictive crimes he committed from which the victims are unlikely to financially recover.[48] Without a showing of gross disproportionality, this habeas court does not find that his sentence was excessive. *United States v. Gonzales*, 121 F.3d 928 (5th Cir. 1997) (If the sentence is not "grossly disproportionate," in the first instance, the Court's inquiry is finished), *abrogated on other grounds*, *United States v. O'Brien*, __ U.S. __, 130 S.Ct. 2169, 2180 (2010)); *see also Smallwood*, 73 F.3d at 1347; *see also*, *Harmelin*, 501 U.S. at 957.

---

[47]*Id.*, p. 13.

[48]*Id.*

The state courts' denial of relief on this claim was not contrary to, or an unreasonable application of, Supreme Court precedent.  Dowl is not entitled to relief on this claim.

## VI.    <u>Recommendation</u>

It is therefore **RECOMMENDED** that Nathaniel Dowl, Jr.'s petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[49]

New Orleans, Louisiana, this 27th day of July, 2011.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[49]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.